3:19-cv-03173-CSB  # 1   Page 1 of 11

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

E-FILED
Thursday, 11 July, 2019 03:31:34 PM
Clerk, U.S. District Court, ILCD

```
EDWARD C. HANKS #N-21633                    )
               Plaintifff,                  )
                                            )
                                            )
    vs.                                     )
                                            )         19-3173
                                            )   Case No. _____
WILLIAM TWADDELL, OFFICER LOOKER,           )
T. CAWTHON, R. KNIGHT, CHAPLAIN             )
LlWELLYN, TARA GOINS, DAVE WHITE,           )
BRITTANY MILLER, NURSE SMITH, JOHN DOE,     )
OFFICER RISLEY, OFFICER WATSON, NURSE       )
WOLF, NURSE GIVENS and NED HUBBARD,         )
               Defendants.                  )
```

## COMPLAINT

### INTRODUCTION

This is a civil action arising from the Conditions at Illinois Department of Corrections (IDOC) Western Correctional Center (WIL) that is so conspiratory that it not only violated Plaintiff's Due Process and Equal Protection Rights, but infringes upon Plaintiff's Right to be free from Cruel an Unusual Punishment.

### JURISDICTION AND VENUE

1. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1334 because the matters in controversy arise under the Constitution and laws of the United States. The civil action seeks declaratory and injunctive relief under U.S.C. §§1343, 2201, and 2202 and 42 U.S.C. 1983. The Religious Land Use and Institutionalized Person Act (RLUIPA) 42 U.S.C. §2000 cc-1 autual, consequential, compensatory, puni- damages.

1

This Court has jurisdiction over plaintiff's state-law claims pursuant to 28 U.S.C. §1367.

2. Venue is proper in this Court under 28 U.S.C. §1391(b) because substanial part of the events or omissions giving rise to plaintiff's claims occurred in this district.

3. Plaintiff have exhausted administrative remedies reasonably available to him prior to bringing this 42 U.S.C. §1983 civil rights claims in accordance with the Prison Litigation Reform Act, 42 U.S.C. §1997(e)(a); although some of the controversial concerns herein is regarding the grievance processes.

## PARTIES

### PLAINTIFF

4. Plaintiff Edward C. Hanks, have been retaliated against, denied religious services and endured a serious medical injury that caused sufferring and serious harm and is at risk of continuous substanstial suffering as a result of Defendants' deliberate indifference to the Conditions at Western Correctional Center, 2500 Rt. 99 South, Mount Sterling, Illinois 62353.

### DEFENDANTS

5. Defendant William Twaddell, at all times mentioned in the complaint was the Chaplain for Western Correctional Center (WCC).

6. Defendant Officer Looker, at all times mentioned in the complaint was a correctional officer working in personal property at WCC.

7. Defendant T. Cawthon, at all times mentioned in the complaint was a Major working 7:00 a.m. to 3:00 p.m. shift.

2

8. Defendant John Doe, at all times mentioned in the complaint held the position of Corr. officer assigned to the yard tower on September 13, 2018.

9. Defendant R. Knight, at all times mentioned in the complaint held the rank of Lieutenant and was assigned to the 7:00 a.m. to 3:00 p.m. Shit

10. Defendant Llewellyn, is a IDOC employee who at all times mentioned in this complaint was Chaplain at WIL.

11. Defendant Goins, is a employee of the IDOC at all times mentioned in this complaint was a Corr. Counselor II who reviewed grievances and Plaintiff's counselor.

12. Defendant White, is a employee of the IDOC and at all times mentioned to tish complaint was a reviewing officer assigned to the Administrative Review Board (ARB) to review grievance.

Nurse Givens, at all times relevant to this complaint was Nurse working under contract with Wexford at WIL Health Care Unit.

Nurse Wolf, at all times relevant to this complaint was a Nurse working under contract with Wexford at WIL Health Care Unit.

13. Defendant Brittany Miller, at all times relevant to this complaint was a Nurse Practitioner working as an employee for the IDOC under contract with Wexford.

14. Defendant Smith, at all times relevant to this complaint was a Nurse Practitioner working as as an employee for the IDOC under contract with Wexford.

15. Defendant Risley, at all times pertaining to this complaint was a Corr, officer working Unit 2-House regarding the events herein.

16. Defendant Waston, at all times metioned in this complaint was a employee of the IDOC working as a Commissary Distributor.

17. Defendant Hubbard, at all times relevant to this complaint was a ophthalmologist working as an employee of the IDOC under contract with Wexford.

### III. LITIGATION HISTORY

18. Plaintiff has brought other lawsuit while incarcerated, although not exactly the same issues, or facts described herin. Over the years there has been a number of other Plaintiff

3

suits concerning numerous incarcerated issues previously, a list is provided below.

19. Hanks v. McGarvey etal., 16-C-2471 filed approximately February 19, 2016 concerning First Amendment religion violations, settled in the Northern District of Illinois.

20. Hanks v. Ramos etal., 00-195-GMP filed approximately Feruary 26, 2006 concerning Conditions, dismissed in the Northeren District of Ill.

21. Hanks v. Stewart etal., No. 02-C-2908 filed approximately 2002 concerning 8th & 14th Amendments violations; consolidated with Hanks v. Cravens etal., 01-c-4896 filed approximately August 28, 2001 concerning conditions of prison, both cases was settled in the Northern District of Illinois.

22. Hanks v. State of Illinois No. 02-cc-4730 filed approximately April 22, 2002, regarding Property, the case was dismissed in the Southern District of of Randolph County.

23. Hanks v. Fairman etal., docket number unknown (papers lost during transfers) filed approximately October 1993, regarding Failure to Protect, dismissed in the Northern District of Illinois.

## IV. NATURE OF THE CASE AND FACTUAL ALLEGATIONS

24. This action stem from the numerous incidents at WCC that was systematic and deliberate from the initial intake upon plaintiff arrival. Plaintiff was transferred to WCC on May 3, 2018. The day after plaintiff proceeded to property to retrieve his personal property and learned that his Islamic religious medallion and chain was being confiscated(after eighteen years approval in other IDOC facilities), among plaintiff's televison broken and other miscellaneous destoryed or taken.

25. The property officer Looker stated "We been doing this a long time

4

and it doesn't matter what you say, that's a gonna." "Internal Affairs got it now you can make your religious complaint to them." Plaintiff had filed a grievance on the matter, but the process was intervened (to be explained below) see Exhibit A1-A8.

26. At this same time too, upon intake Plaintiff wrote Chaplain Twaddell establishing confirmation from Menard Correctional Center to participate with Ramandah activities and receive nightly meals at sunset. Chaplain Twaddell denied placing Plaintiff on the participation list, and a grievance was written (see Exhibits B1-B4). Additionally, upon information and belief Twaddell was informing other staff that the confirmation form was forged, Plaintiff was a lying muslim and not to let me out of the cell for services. Only upon an emergency grievance to Warden Watson was Plaintiff allowed to attend, after five days without nightly meals, (see Exhibits).

27. Due to the filing of this grievance Plaintiff was denied to be placed on the Jumu'ah list for months and other muslims transferred in was placed on the list before Plaintiff; while Officer Risley on June 1, 2018 informed Plaintiff "you haven't waited long enough, lock back up!" And something to the effect "grievance man", although the control booth officer had originally let Plaintiff out of the cell to attend services from his list, the call had been reversed in retaliation, (See Exhibits C1-C5).

28. During this time period Plaintiff was under the impression his grievances (Exhibit A) was being exhausted after forwarding them to the ARB, yet they were never returned, after mailing them out to ARB, to Dave White.

29. On August 21, 2018 after a routine schedule visit to the Optometrist as an out-patient (hypertension), I was seen by Dr. Ned Hubbard and given Ketotifen Fumarate Ophthalmic Solution while requesting transitional lenses. Days later Plaintiff eye became blood clogged and swollen. A vein bursted, Plaintiff lost his equilbrium, face became swollen and dropped, with blurry

5

vision and numerous other symptons until plaintiff had to be taken to an offsite hosptial and later had a minor stroke (see Exhibits D1-D25).

30. On September 13, 2018 Plaintiff and other Muslims were praying on the recreational yard, when John Doe radio Lieutenant R. Knight and Major Cawthon that we were in a group, when cameras clearly shown that we were praying. Even so, Knight and Cawthon handcuffed Plaintiff and muslim Trull and placed only us two in segregation for praying, and a grievance was filed, (see Exhibits E1-19). Where Dave White ARB, conspired to not address grievances lost.

31. Sometime during these days of confusion, Plaintiff was still trying to receive medical treatment regarding the eye incident and was denied proper service by Nurse Practitioner Smith and Nurse Practitioner Brittany Miller who allowed Plaintiff to endure extreme pain and sufferring, by informing plaintiff to just use a towel over eye. They failed to provide a CAT Scan or MRI done. Although it was months later that Plaintiff was given medicine and pain shot by a new doctor for harm Plaintiff still suffers.(D's).

32. Still at this time the grievances filed about the yard incident was given to Counselor Tara Goins was thought to undergoing processing, after after some time Plaintiff inquired into those grievances and was informed they was pending by Goins. Months later after asking Goins again about the grievances she said "they were passed on to another counselor, because she could not hear them for she was the counselor for my unit". Yet she has been the secondary grievancer on numerous of Plaintiff's grievances see (E's) The grievances to these incident has never been resolved due to Goins deliberate indifference, and the conspiracy not to address this by ARB.

33. Thereafter, around October 2018, Plaintiff attended commissary, and was given the wrong pinwheel for his typewriter by employee Watson in which he initially refused to exchange and Plaintiff filed a grievance that was resolved at the institutional level. Yet thereafter Watson continue to place plaintiff last on every commissary lines for months; when it was then for up to thirty-five to forty inmates, and then Plaintiff received merchan-

6

34. dise that was open and then re-taped and leaking meat. Plaintiff fears that the retaliation may become more grievous in the future (see Exhibit F1-F5).

### V. PLAINTIFF'S LEGAL CLAIMS DEPRIVATION OF RIGHTS

Plaintiff adopts and realleges the allegations of paragraphs 1 through 34 as though fully set forth herein as paragraph 35 of its Count I.

Every person who, under color of any statue, ordinance, regulation custom or usage, or any state or territory or district or Columbia, subject or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and law, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable 42 U.S.C. § 1983 (All Exhibits).

36. Conditions imposed against Plaintiff for his religious belief served absolutely no penological purpose and was done for no vaild reason except for the fact Plaintiff is a Muslim and filed grievances.

37. In fact, on numerous occassions when Plaintiff attempted to utilize Statute 730 ILCS 5-3-8-8 (Grievance Process), or redress the Government under Federally protected Rights, Plaintiff's grievances was either destoryed, misplaced, not processed or shield against those who it was filed too.

38. The confiscation of Plaintiff's religious chain & Islamic charm was without justification (which was extorted to be sent home in order to replaced broken televsion), thereafter denied to be place on Ramandah participation, proximity to the Jumu'ah denial, subsequently segregated for praying on the recreational yard, denied an opportunity to renew religious diet, and the reason why ARB failed to address grievances lost or destoryed by WIL, order

7

prayer rug and beads or answer request to have a replacement of chain and charm disregarded by defendant Llewellyn after numerous request (see Exhibits G1-G3). All of these acts individually or collectively violated Plaintiff's U.S.C. Constitutional Rights and RLUIPA 42 U.S.C. §2000 cc-1.

39. In light of Lippert v. Baldwin, 1:10-cv-4603 (N.D. Ill. Apr. 28, 2017), in which Plaintiff is a Class Member to the above entitled cause and objected to the proposed settlement agreement in its current form partially. Whereas Plaintiff reserved the right to pursue monetary damages, because of Plaintiff person injury to his left eye, which later caused a stroke and was not treated. Which Plaintiff endured extreme suffering and continues to suffer by the acts of Defendants Ned Hubbard, Nurse Practitioner Smith and Nurse Practitioner Brittany Miller, employees of IDOC under the contract with Wexford, who is also a named Defendant therein for the harmful, cruel and unusual punishment conditions experience throughout IDOC that effected Plaintiff personally. Case: 1:10-cv-4603 Document # 803-1, 01/03/19. (Exhibits D1-D24).

40. Especially since the conspiratory and mockery medical lay-in of (30 days) September 25, 2018 by Defendant Smith which was intended to: (1) prevent Plaintiff from showing his disfigured face (eye injury) to as many people as possible, (2) discussing with others about recently being taken to segregation for praying on the yard and (3) to see whether the grievance about the yard excess feces was being inforced. These were 'hot topics' throughout the institution concerning plaintiff at this time under information and belief from staff and inmates. It served no purpose to help Plaintiff's injury when inmates with cruthes and blindness attended the yard. Moreover, Defendant Miller sent Plaintiff back from the Health Care Unit, without any treatment whatsoever (See Ex.D16,D18; Ex. E2-6,16 and G2-3).

41. Although Plaintiff seeks the declaration and injunctive relief that Lippert's, "Consent Decree" proposed and the outlined changes requirements therein, Plaintiff's individual injury cannot be ignored.

42. To Clearly show that the nature and elements of the conspiratory conditions at WIL was of one objective was when it became apparent the events surrounding Plaintiff's medical treatment. On April 18, 2019, Plaintiff went to the Health Care Unit with concerns of rolls of bumps on Plaintiff forehead leading to my left eye(the eye that was weaken by def. Hubbard actions), it was first said to be heat rash, and Plaintiff was sent back to his living quaters. Days later those bumps turned out to be Shingles, that formed a beehive like over Plaintiff's head and eye (See Exhibits H1-H9).

43. Plaintiff's was sent to an off-site Hospital (Quincy Medical Group) for examination, upon return Plaintiff was quarantined in segregation instead of the infirmary. There in segregation, there was no light, hot water or electrical outlets. During this time period of April it became extremely cold at night beween 39-45 degrees, and although Plaintiff was there as a medical patient, Plaintiff was treated as though in segregation status and denied a medical blanket. Thereafter Plaintiff suffered greatly in pain therefrom.

44. After about thirteen days in segregation under quarantine Plaintiff was released. Perhaps six days later Plaintiff developed seizure like symptoms and again had to be taken to an off-site hospital for examination (See Exhibits H8-H9 and I1-I17; in which has extended the pain and sufferring.

45. Due to the cold conditions being placed in segregation without proper comfort of heat in the healing process Plaintiff suffer the siezure symptoms for at least nine days. Although not permanent they may return. Plaintiff filed an emergency grievance about this ordeal and the need for medical pain medicine and the Health Care Unit treatment (See Exhibit J1-J3).

46. Days later after filing this grievance Nurses Given And Wolf would pass out medication and inform Plaintiff that the pain medication prescribed was out when in fact it was not and next shifts nurses, gave Plaintiff the much needed medication. The retaliation was obvious (See Exhibit K).

47. As a result of defendants actions Plaintiff suffered through difficult and tortuous conditions by repeated retaliation since Plaintiff intake at WIL. The proximity of these acts have caused Plaintiff mentally and physi-

cally suffered effects of cruel and unusual punishment and due process violations under the First, Eighth, and Fourteenth Amendments to the United States Constitution.

48. Plaintiff have no plan adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparrably injured by the conduct of the defendants unless this Court grant the declaratory and injunctive relief which Plaintiff seeks.

49. Each defendant is sued individually and in his/her official capacity. at all times mentioned in this complaint each defendant acted under the color of State law.

WHEREFORE, Plaintiff EDWARD C. HANKS, respectfully pray that this Court enter judement granting Plaintiff:

50. A declaration that the acts and omissions described herein violated Plaintiff's rights under the State's law cited and laws of the United States Constitution.

51. A preliminary and permanent injunction ordering Defendants, William Twaddell, Officer Looker, R.Knight, Chaplain Llewellyn, Tara Goins, Dave White, John Doe, Officer Risley, Nurse Givens, Nurse Wolf, Dave White, R. Knight, Chaplain Llwellyn, T. Cawthon, Britany Miller, Nurse Smith, Ned Hubbard and Watson, to cease and/or retaliating against Plaintiff for Plaintiff's religious status, using the grievance processes and denying Plaintiff equal treatment, safety, rights and privileges at IDOC Western Correctional Center.

52. An injunction and declaration against Defendants, Ned hubbard, Brittany Miller, Nurse Wolf, Nurse Givens and Practitioner Smith for violating Plaintiff's Eighth and Foruteenth Amendments in accordance with the United States Constitution in light of <u>Lippert v. Baldwin</u>, 10-cv-4603 (N.D Ill. April 2017) proposed "Consent Decree".

53.

53. Enter in Plaintiff's favor and against each Defendant on the account of the <u>Conditions</u> that caused Plaintiff's denials, pain, and sufferring due to those conditions, compensatory damages in the amount of $30.000 jointly and severally.

54. Punitive damages in the amount of $35.000 against defendants; except Defendant Ned Hubbard in the amount of $45.000.

55. Plaintiff's cost in this litigation.

56. Plaintiff <u>Demand</u> a jury on all triable.

57. Any additional relief this Court deems, just, proper and equitable.

Date: July 11, 2019

Respectfully submitted,

*Edward Hanks*
EDWARD C. HANKS N-21633 Pro-se
2500 Rt. 99 South
Mount Sterling, Illinois 62353